THIS OPINION HAS NO PRECEDENTIAL VALUE

THIS OPINION HAS NO PRECEDENTIAL VALUE.  IT SHOULD NOT BE CITED OR RELIED ON AS 
 PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 239(d)(2), SCACR.
THE STATE OF SOUTH CAROLINA
In The Court of Appeals

 
 
 
Sundown Operating Company, Inc., a South Carolina corporation; Sunrise Coin Company, Inc., a South Carolina corporation; and High Noon Properties, Inc., a South Carolina corporation;
Respondents/Appellants,
v.
Intedge Industries, Inc., a New Jersey corporation; Quickie Food Stores of North Myrtle Beach, Inc., d/b/a Hardwick's Bar & Restaurant Supplies, a South Carolina corporation; BFPE International, Inc., f/k/a Atlantic Fire Systems, Inc., a Maryland corporation; Wormald Fire Systems, Inc., f/k/a Ansul Fire Systems, Inc., a Delaware corporation; and Ansul Incorporated, a Delaware corporation,
Defendants,
of whom BFPE International, Inc., f/k/a Atlantic Fire Systems, Inc., a Maryland corporation is
Appellant/Respondent.
 
 
 

Appeal from Horry County
 Steven H. John, Circuit Court Judge
 J. Stanton Cross, Jr., Master-in-Equity

Unpublished Opinion No. 2007-UP-091
Heard December 8, 2006  Filed February 23, 2007

AFFIRMED

 
 
 
Charles E. Carpenter, and Carmen V. Ganjehsani, of Columbia; Michael S. Hopewell, of Florence; for Appellant-Respondent.  
Daniel Francis Blanchard, III, and Susan Corner Rosen, of Charleston; Peter Fredrick Asmer, Jr., of Charlotte; for Respondent-Appellants.
 
 
 

PER CURIAM:  On cross-appeals from a default judgment, Sundown Operating Company, Sunrise Coin Company, and High Noon Properties, Inc. (collectively Sundown) contend the master-in-equity erred in (1) failing to award prejudgment interest, (2) invalidating the August 28, 2001 service of the summons and complaint, and (3) finding BFPE International, Inc. f/k/a Atlantic Fire Systems, Inc.s motion complied with Rules 6(d) and 7(b)(1) of the South Carolina Rules of Civil Procedure.  BFPE contends the master erred in failing to find that the October 2, 2001 entry of default should be voided as a matter of law and the master erred in failing to set aside the default judgment.   We affirm.  
FACTS
On September 16, 1998, a fire destroyed a restaurant and pub owned and operated by Sundown.  It is alleged that the fire was caused when a heating element in an electric fryer failed in an area that was submerged in frying oil causing the frying oil to ignite and burn.  According to Sundown, the electric fryer was missing a high limit safety thermostat, which was supposed to automatically shut off the power to the heating unit once the frying oil temperature exceeded the safety thermostats high temperature set point and would have allowed the frying oil to cool instead of igniting.  Sundown also alleges that it had a service contract with BFPE to install, maintain, inspect and service Sundowns fire equipment, including range hood fire extinguishing systems and fire suppression systems.  
On August 24, 2001, Sundown filed a Summons and Complaint against five defendants, including BFPE.  In its complaint, Sundown asserted causes of action for negligence and breach of contract against BFPE, alleging BFPE failed to properly inspect and maintain the fire suppression system.  Sundown further alleged that the fire suppression system failed to operate properly, causing the fire to spread.  Sundown sought actual and punitive damages and interest as provided by law against all defendants, including BFPE.  
BFPE is incorporated in Maryland and has nine business locations throughout Maryland, Virginia, North Carolina, and South Carolina.  Because BFPE does not have a registered agent listed with the South Carolina Secretary of State, Sundown attempted to serve Donald R. Leonard, who was BFPEs registered agent in Maryland and North Carolina.  On August 27, 2001, Sundown sent two copies of its Summons and Complaint to Leonard, at two separate addresses, Myrtle Beach, SC and Rocky Mount, NC.  On August 28, 2001, service was accepted at the Myrtle Beach address.  However, service was not accepted by Leonard, but rather by Randy Adams who signed Leonards name.  Apparently, Adams asked the postal carrier if he could sign for Leonard who advised him that he could.  
The second set of the Summons and Complaint was received and signed for by Leonard on September 4, 2001.  On or about September 5, 2001, Leonard gave the Summons and Complaint to David McGlynn, BFPEs general manager in Clayton, North Carolina.  Glynn forwarded the papers to BFPEs Vice President, George Hill, in Hanover, Maryland.  According to Hill, on September 14, 2001, he then forwarded a letter with copies of the Summons and Complaint to John Doetzer of Consolidated Insurance Carrier, BFPEs insurance agent.   There is a dispute, however, over when Doetzer received the documents.  Doetzer stated that the Summons and Complaint were not enclosed with the September 14, 2001 letter and were not forwarded to him until October 1, 2001.  
On October 2, 2001, Doetzer telephoned Sundowns counsel to inquire about an extension of time to file an Answer.  Sundowns counsel informed Doetzer that an entry of default had already been forwarded to the clerk of court and that an extension would most likely not be granted.  Default was entered on the same day based upon Sundowns Affidavit of Service by Certified Mail filed on September 17, 2001.  On October 15, 2001, suit papers were sent by BFPEs insurance carrier, CNA Insurance Company, to the assigned defense counsel for BFPE.  
On October 18, 2001, BFPE filed a Notice of Motion and Motion to Set Aside Default and to Permit Enlargement of Time.  On October 29, 2001, Sundown filed a Motion for Judgment by Default against BFPE based on the August 28, 2001 service date and entry of default on October 2, 2001.  Sundown then filed another Affidavit of Counsel in Support of Entry of Default based on the September 4, 2001 service date.  A second entry of default based on the September 4, 2001 service of process was entered on December 10, 2001.  
A hearing was set for March 18, 2002 to hear BFPEs Motion to Set Aside Entry of Default.  On March 12 and 14, 2002, BFPE filed seven affidavits in support of its motion.  At the hearing, the circuit court allowed BFPE to file an Answer, based partly on the holding in Pilgrim v. Miller, 2002 WL 44112 (S.C. Ct. App. Jan. 14, 2002).  However, upon learning that this court had granted a Petition for Rehearing in the Pilgrim case, the circuit court decided to delay issuing its opinion.  On June 17, 2002, this court reversed the earlier opinion, affirming the trial courts denial of the motion to set aside the default in that case.  See Pilgrim v. Miller, 305 S.C. 637, 567 S.E.2d 52 (Ct. App. 2002).[1]  On July 18, 2002, the circuit court held a second hearing on BFPEs motion to set aside the default and denied BFPEs motion.   
On September 28, 2004, an Order of Reference was issued referring the case to the master for a hearing to assess damages against BFPE and for the issuance of a final order.  After the damages hearing, the master entered separate judgments in favor of Sundown as follows:  (1) an award of $273,336.00 in actual damages to Sunrise; (2) an award of $394,848.38 in actual damages to Sundown Operating Company; and (3) an award of $524,800.70 in actual damages to High Noon.  The master denied Sundowns request for prejudgment interest.  This appeal followed.  
LAW/ANALYSIS
Prejudgment Interest
Sundown contends the master erred in failing to award prejudgment interest.  We disagree.  
An award of prejudgment interest is within the discretion of the fact-finder and will not be overturned absent an abuse of discretion.  See Knight v. Sullivan Power Co., 140 S.C. 296, 304, 138 S.E. 818, 820-21 (1927) (stating that in exercising its discretion, a jury might assess interest as a part of the damages).  An abuse of discretion occurs when an order is controlled by an error of law or when the order is without evidentiary support.  Thompson v. Hammond, 299 S.C. 116, 119, 382 S.E.2d 900, 902-903 (1989).  
Initially, we address BFPEs argument that Sundown failed to specifically plead for the recovery of prejudgment interest in its complaint as required by South Carolina law.  It has been well established under South Carolina law that parties must plead for prejudgment interest in order for it to be recovered.  See McMillan v. S.C. Dept of Agric., 364 S.C. 60, 74, 611 S.E.2d 323, 330 (Ct. App. 2005) (Prejudgment interest must be specifically pled in order to be recovered.)  If no request for prejudgment interest is made in the pleadings, it cannot be recovered on appeal.  Tilley v. Pacesetter Corp., 355 S.C. 361, 375, 585 S.E.2d 292, 299 (2003) (citation omitted).  
In its complaint, Sundown makes only a general request for interest as provided by law.  This request is too general and vague to meet the strict requirement that a demand for prejudgment interest must be specifically pled.  Sundown offers numerous cases for the proposition that a pleading such as its is sufficient.  However, all of the cases cited are outside this jurisdiction, and South Carolina case law is controlling.  Accordingly, Sundown did not sufficiently plead prejudgment interest and thus should not be awarded such.  
However, even if this court were to find Sundown sufficiently pled prejudgment interest, the master was correct in refusing the award.  Sundown argues it is entitled to an award of prejudgment interest under two theories.  First, Sundown argues it should be awarded prejudgment interest as an element of damages.  
Sundown cites to the cases of Knight v. Sullivan Power Co., 140 S.C. 296, 138 S.E. 818 (1927) and Wilson & Co. v. Atlanta & Charlotte Airline Ry., 16 S.C. 587 (1882) for the proposition that prejudgment interest can be recovered in tort claims.  However, in both of these cases it was recognized that a plaintiff could not recover interest as a matter of right or interest eo nominee, which means under that name,  and that it would have been possible error for a jury to have specifically awarded interest eo nominee.  Knight at 304, 138 S.E. at 820-21; Wilson 16 S.C. 587.  In each case, the jury merely awarded lump sum damages, and it was impossible for the appellate court to have determined whether the jury did in fact include interest in the verdicts.  
More recent South Carolina cases dealing with prejudgment interest state that, as a general rule, prejudgment interest is not recoverable on an unliquidated claim in the absence of agreement or statute.  See Builders Transp., Inc. v. S.C. Prop. & Cas. Ins. Guar. Assoc., 307 S.C. 398, 406, 415 S.E.2d 419, 424 (Ct. App. 1992).  A claim is liquidated if the sum claimed is certain or capable of being reduced to a certainty.  Id.  Unliquidated claims that are capable of being reduced to certainty by a simple mathematical calculation can be considered liquidated for the purpose of awarding prejudgment interest under South Carolina law.  Id.  Liquidated damages are damages the amount of which has been made certain and fixed either by the act and agreement of the parties or by operation of law to a sum which cannot be changed by the proof.  22 Am. Jur. 2d Damages § 489 (2003).
The facts of this case demonstrate that Sundowns claim was not capable of being reduced to a certainty.  Sundowns damages are simply not of the type that can be made certain or cannot be changed by proof.  In order to determine the damages to be awarded, the master had to consider the testimony of fact witnesses, expert witnesses and exhibits admitted into evidence.  There was no fixed formula used for determining the amount of Sundowns damages.   At the time the claim arose, the date of the fire, conditions were not fixed for determining the amount of Sundowns damages to a sum certain.  The testimony of Sundowns fact witnesses and the exhibits presented by Sundown demonstrate the measure of recovery was not fixed on the date of the fire.  Furthermore, many of Sundowns damages did not even arise until after the date of the fire, such as the lost profits and revenues, loan and interest charges, legal and permit fees, storage charges, and rental income.  Accordingly, Sundowns damages were not liquidated, and therefore, Sundown was not entitled to prejudgment interest as an element of damages.  
As its second argument, Sundown argues it should be awarded prejudgment interest pursuant to section 34-31-20(A) of the South Carolina Code (Supp. 2005), which provides:  

In all cases of accounts stated and in all cases wherein any sum or sums of money shall be ascertained and, being due, shall draw interest according to law, the legal interest shall be at the rate of eight and three-fourths percent per annum.  

While all parties agree that the instant case does not involve an account stated, Sundown contends it involves damages that are readily ascertainable and capable of being reduced to a sum certain.  Based on the reasoning stated above, this argument fails, and Sundown is not entitled to an award of prejudgment interest.  
Service of Process Issues
BFPE contends the October 2, 2001 entry of default should be voided because it was based on a service of process that was later found to be insufficient.  BFPE argues that if this court voids the October 2, 2001 entry of default, the masters order should also be voided because it was based on the October 2, 2001 entry of default.  We disagree.  Furthermore, as an additional sustaining ground Sundown contends the October 2, 2001 entry of default should not be voided because the circuit court erred in invalidating the August 28, 2001 service.  We agree.  
Questions of fact arising on a motion to quash service of process for lack of jurisdiction over the defendant are to be determined by the court. Lawson v. Jeter, 243 S.C. 103, 106, 132 S.E.2d 276, 277 (1963). Appellate courts are bound by the circuit courts finding on such issues unless they are wholly unsupported by the evidence or manifestly influenced or controlled by error of law.  Id.  The plaintiff has the burden to establish that the court has personal jurisdiction over the defendant. Jensen v. Doe, 292 S.C. 592, 594, 358 S.E.2d 148, 149 (Ct. App. 1987). The plaintiff need only show compliance with the rules.  Roche v. Young Bros., Inc., 318 S.C. 207, 211, 456 S.E.2d 897, 900 (1995). When the civil rules on service are followed, there is a presumption of proper service.  Id. (citing 62B Am Jur 2d Process § 111 (1990)). 
Sundown is correct in arguing that the circuit court erred in voiding the August 28, 2001 service of process.   BFPE has failed to show that Adams was unauthorized to accept service of process for BFPE.  See Roche, 318 S.C. at 211, 456 S.E.2d at 900 (stating that under Rule 4(d)(8), the defendant, not the plaintiff, must prove that the receipt was signed by an unauthorized person, and the plaintiff need only show compliance with the rules).  The procedural rules governing service upon a corporation state in pertinent part that personal service shall be made as follows:    

(3) Corporations and Partnerships. Upon a corporation or upon a partnership or other unincorporated association which is subject to suit under a common name, by delivering a copy of the summons and complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.
(8) Service by Certified Mail. Service of a summons and complaint upon a defendant of any class referred to in paragraph (1) or (3) of this subdivision of this rule may be made by the plaintiff or by any person authorized to serve process pursuant to Rule 4(c), including a sheriff or his deputy, by registered
or certified mail, return receipt requested and delivery restricted to the addressee. Service is effective upon the date of delivery as shown on the return receipt. Service pursuant to this paragraph shall not be the basis for the entry of a default or a judgment by default unless the record contains a return receipt showing the acceptance by the defendant. Any such default or judgment by default shall be set aside pursuant to Rule 55(c) or Rule 60(b) if the defendant demonstrates to the court that the return receipt was signed by an unauthorized person. If delivery of the process is refused or is returned undelivered, service shall be made as otherwise provided by these rules.

Rule 4(d)(3), (8), SCRCP.  Under Rule 4(d), service may be effected upon a managing or general agent of a corporation even though the managing or general agent was not specifically authorized by the corporation to accept service.  62B Am. Jur. 2d Process § 272 (1990).  In Adams affidavit, he states that he is the manager of BFPEs location in Wilmington, North Carolina, and was working at BFPEs locations in Myrtle Beach on August 28, 2001.  
Furthermore, in Schenk v. National Health Care, Inc., 322 S.C. 316, 319-20, 471 S.E.2d 736, 737-8 (Ct. App. 1996), this court held that service was proper on a corporate defendant when the summons and complaint were delivered to the an office manager who told the process server that she would pass the papers along to headquarters.    Sundown has shown compliance with the rules for service, and BFPE has failed to show Adams was not authorized to accept service.  Accordingly, the circuit court erred in finding the August 28, 2001 service of process invalid.  Additionally, because the August 28, 2001 service of process was valid, the October 2, 2001 entry of default was valid as well.  
Motion to Set Aside Entry of Default
BFPE argues the circuit court erred in failing to set aside the October 2, 2001, entry of default.  We disagree.  
The decision of whether to set aside an entry of default or a default judgment lies solely within the sound discretion of the trial judge, and such a decision will not be reversed absent an abuse of that discretion.  Thompson v. Hammond, 299 S.C. 116, 119, 382 S.E.2d 900, 902-03 (1989).
An abuse of discretion occurs when the order was controlled by an error of law or when the order is without evidentiary support.  Id.
As a preliminary matter, BFPE contends the circuit court erred in employing the wrong standard in its order denying the motion to set aside default.  In matters concerning a default judgment, Rule 55, SCRCP, states default may be entered when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise.  An entry of default may be set aside [f]or good cause shown and, if a judgment by default has been entered, [the court] may likewise set it aside in accordance with Rule 60(b).  See Rule 55(c), SCRCP.  Rule 60(b), SCRCP, states that relief from judgment or order may be given based on the following:  

(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, order, or proceeding for the following reasons:
 
 (1) mistake, inadvertence, surprise, or excusable neglect;

 (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b);

 (3) fraud, misrepresentation, or other misconduct of an adverse party;

 (4) the judgment is void;

 (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application.

The circuit court clearly used the correct standard in upholding the entry of default.  In its order, the circuit court specifically stated that in order to have an entry of default set aside, a defaulting party must show that there is good cause for doing so.  The circuit court went on to say that as a practical matter, the criteria for obtaining relief from a judgment under SCRCP 60(b)  mistake, inadvertence, excusable neglect, surprise, newly discovered evidence, fraud, misrepresentation  are also relevant in determining whether good cause has been shown under SCRCP 55(c), although the factors are applied with greater liberality within the context of Rule 55(c) vis-à-vis Rule 60(b).   The circuit court was correct in this assessment.  See Hill v. Dotts, 345 S.C. 304, 310, 547 S.E.2d 894, 897 (Ct. App. 2001).   The circuit court went on to correctly apply these factors in finding that no basis for setting aside the entry of default existed.  
Next, BFPE contends the circuit court erred in failing to set aside the entry of default because it satisfied the factors as laid out in the case of Wham v. Shearson Lehman Bros., Inc., 298 S.C. 462, 381 S.E.2d 499 (Ct.  App. 1989), and because there was good cause.  Wham lists three factors to be used when deciding to set aside an entry of default under Rule 55(c).   These are
(1) the timing of the motion for relief; (2) whether there is a meritorious defense; and (3) the degree of prejudice if relief is granted.  Id. at 465, 381 S.E.2d at 501-2.  BFPE filed its motion to set aside the entry of default on October 18, 2001, and did not file its memoranda supporting this motion until March 18, 2002.  Though BFPE asserts it has a meritorious defense as required by Wham, the timing of the motion, the prejudice that would ensue, coupled with the standard of review this court must follow in setting aside an entry of default prevents this court from finding the circuit court erred in failing to set aside the entry of default.  
Additionally, BFPE contends there was good cause to set aside the entry of default because the circuit court partially relied on the case of Pilgrim v. Miller, 350 S.C. 637, 567 S.E.2d 527 (Ct. App. 2002) for its finding that a party did not demonstrate good cause for setting aside the entry of default when her insurer had negligently failed to answer a complaint filed against her despite the fact that the party had promptly delivered the suit papers to her insurer well within the time allotted for answering.  In Pilgrim, this court held that the insurers failure to answer the complaint is imputed to the defaulting party.  Id. At 642, 567 S.E.2d 529.  BFPE contends the trial court erred in relying on Pilgrim because the case was later vacated on April 25, 2003, almost a year after the trial court issued its opinion.    
However, the case law the Pilgrim court based its decision on is still good law.  The courts of this state have consistently held that the negligence of an attorney or insurance company is imputable to a defaulting litigant.
 See Roberts v. Peterson, 292 S.C. 149, 151, 355 S.E.2d 280, 281 (Ct. App. 1987) (noting, in a case involving the failure of a school official to answer a complaint on behalf of a school employee, that the negligence in the failure to act was more excusable, we think, than the cases involving attorneys or insurance companies); see also Ledford v. Pa. Life Ins. Co., 267 S.C. 671, 677, 230 S.E.2d 900, 903 (1976) (holding, on appeal of an order vacating a default judgment, that an insurance company attorneys failure to answer the complaint was not such mistake or excusable neglect as to warrant vacation of the default judgment).   Accordingly, the circuit court based its denial of the motion to set aside entry of default on theories that are still sound in todays case law.    
BFPE argues that the conflicting case of Ricks v. Weinrauch, 293 S.C. 372, 373-75, 360 S.E.2d 535, 536-37 (Ct. App. 1987) (relying on Sears, Roebuck & Co. v. Ramey, 318 S.E.2d 740, 742 (Ga. Ct. App. 1984)) should be controlling.  In the Ricks case, this court concluded that a defendants belief that her insurance company was defending a complaint filed against her was sufficient for a showing of good cause to set aside an entry of default.  Id. at 373-5, 360 S.E.2d 536-7.  However, notwithstanding the Ricks case, the case law that the circuit court based its decision on is still good law and has not been overturned.  Accordingly, the circuit court did not abuse its discretion in refusing the set aside the entry of default.[2]  
CONCLUSION
For the reasons stated herein, the trial courts decision is 
AFFIRMED.
HEARN, C.J., BEATTY, and SHORT, JJ., concur.

[1]  The second Pilgrim opinion was later vacated after the parties settled.  
[2]  Because we affirm on the previous issue, we need not reach the additional issue of whether BFPEs Motion to Set Aside Entry of Default complied with Rules 6(d) and 7(b)(1) of the South Carolina Rules of Civil Procedure.  See 
Futch v. McAllister Towing of Georgetown, Inc., 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) ([A]n appellate court need not address remaining issues when disposition of prior issue is dispositive.).